IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Deborah D. Blake, ) | C/A No. 0:13-276-DCN-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Deborah D. Blake ("Blake"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**ADMINISTRATIVE PROCEEDINGS**

In March 2010, Blake applied for DIB and SSI, alleging disability beginning October 25, 2006. Blake's applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on September 8, 2011, at which Blake, who was represented by Herman L. Moore, a non-attorney representative, appeared and

___

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for the Commissioner of Social Security as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



testified. After hearing testimony from a vocational expert, the ALJ issued a decision on September 22, 2011 denying benefits and concluding that Blake was not disabled. (Tr. 10-19.)

Blake was born in 1959 and was forty-seven years old at the time of her alleged disability onset date. (Tr. 145.) She has a high school education and completed a certificate program for computer operator. (Tr. 197.) She has past relevant work experience as a housekeeper, and a field inspector and assembly line worker for a manufacturing company. (Tr. 198.) In her application, Blake alleged disability since October 25, 2006 due to an injured left hand, carpal tunnel, mental illness, and depression. (Tr. 196.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2012.

2. The claimant has engaged in some substantial gainful activity since October 25, 2006, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

    * * *

3. The claimant has the following severe impairments: left arm injury, carpal tunnel syndrome and an adjustment disorder with anxiety and depression (20 CFR 404.1520(c) and 416.920(c)).

    * * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    * * *

5. After careful consideration of the entire record, . . . the claimant has the residual functional capacity to perform light[] work as defined in 20 CFR 404.1567(b) and 416.967(b) with no repetitive pushing/pulling with the left non-dominant upper extremity; no climbing of ladders, ropes or scaffolds; and only occasional use of the left upper extremity for fine and gross manipulation. The claimant is further limited to simple routine and repetitive tasks with only occasional contact with the general public.

    * * *

6. The claimant is capable of performing past relevant work as a housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

* * *

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 1999, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 12-18.) Blake submitted additional evidence to the Appeals Council, which denied Blake's request for review on December 12, 2012, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(I), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.  However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. §§ 404.1520(h), 416.920(h).



evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

## ISSUES

Blake raises the following issues for this judicial review:

1. Whether the ALJ erred in finding that the Plaintiff could perform her past relevant work as a housekeeper and whether the Plaintiff could work at the light level[;]

2. Whether the ALJ erred in finding the Plaintiff would be limited to simple, routine and repetitive tasks with only occasional contact with the general public[; and]

3. Whether the ALJ erred in not asking proper hypothetical questions of the VE[.]

(Pl.'s Br., ECF No. 20 at 5.)

## DISCUSSION

**A.    Residual Functional Capacity**

Essentially, Blake appears to argue that the ALJ's residual functional capacity assessment is not supported by substantial evidence.  Blake's brief appears to present the following specific arguments in support of her issues on appeal:  (1) the ALJ erred in giving little weight to the opinions of Dr. Jonathan Paley, Blake's treating physician; (2) the ALJ erred in evaluating her credibility; and



(3) the ALJ's hypothetical question to the vocational expert failed to include all of Blake's limitations.

> As stated above, the ALJ found that Blake retained
>
> the residual functional capacity to perform light[] work as defined in 20 CFR 404.1567(b) and 416.967(b) with no repetitive pushing/pulling with the left non-dominant upper extremity; no climbing of ladders, ropes or scaffolds; and only occasional use of the left upper extremity for fine and gross manipulation. The claimant is further limited to simple routine and repetitive tasks with only occasional contact with the general public.

(Tr. 14.)

### 1. Blake's Physical Limitations

With regard to her physical limitations, Blake appears to argue that Dr. Paley's medical notes and opinions, as well as Blake's testimony, reveal that Blake is unable to use her left upper extremity. In considering Blake's testimony, the ALJ found that her allegations of pain and left upper extremity limitations were "not particularly credible given the lack of support in the medical evidence of record." (Tr. 15.) The ALJ observed that examinations failed to reveal that Blake was ever in any acute distress; that Dr. Paley indicated in December 2006 that there were some "over-reactive physical examination findings" and in March 2007 that some of the findings were out of proportion to the examination; that there was evidence of non-compliance, observing numerous cancellations and no-shows to physical therapy from September to November 2007; that other than the government-ordered consultative examination in July 2010, that record failed to reveal Blake sought treatment for her left upper extremity since March 2009 or her mental condition since December 2010, suggesting that her condition was not as serious as alleged. (Tr. 15-16.) The ALJ

further observed that Blake was able to perform a significant range of daily activities to some extent since her alleged onset date.

Additionally, the ALJ indicated that Dr. Paley examined Blake in November 2006 following a work-related injury, "when [Blake's] left ring finger was caught in a conveyor belt and she jerked her left shoulder, hand and wrist and sustained a laceration to the left ring finger." (Tr. 16.) The ALJ continued to summarize Blake's treatment records as follows:

> During examination in November 2006, Dr. Paley found the claimant to have limited guarded range of motion of the left elbow and left shoulder with limited strength due to pain, decreased grip strength of the left hand and decreased sensation in the fingers of her left hand. Dr. Paley allowed the claimant to continue working on her job with light duty and no use of the left arm. In December 2006, Dr. Paley reported that there were some over-reactive physical examination findings. In January 2007, the claimant reported numbness and tingling in the left hand and wrist and nerve conduction demonstrated left carpal tunnel syndrome. In February and March 2007, the claimant continued to complain of left hand pain and examination revealed decreased grip strength and decreased sensation of the left hand, with decreased strength in the left shoulder. In March 2007, Dr. Paley again reported that some of the findings were out of proportion to the examination.
>
> In September 2007, the claimant underwent left carpal tunnel release. Postoperatively, the claimant continued to complain of pain and examinations through March 2009 revealed guarded range of motion of the left wrist and diminished grip strength of the left hand with decreased sensation. (Exhibit 3F) There is no evidence that the claimant sought out any further treatment for her left upper extremity following the March 2009 office visit. During a consultative examination by Dr. Adebola Rojugbokan in July 2010, the claimant had decreased grip strength (1/5) in the left hand with decreased range of motion of the left wrist; however, she was still able to button buttons, pick up coins, and grasp and manipulate larger objects with her left hand. Examination of her left shoulder and elbow was normal. Significantly, there was no evidence of muscular atrophy or reflex abnormality of the left upper extremity. There were no limitations in her dominant right hand. Moreover, the claimant had a normal gait and she was able to squat. (Exhibit 10F) Notably, an x-ray of the claimant's left shoulder in July 2010 revealed only mild osteoarthrosis of the left acromioclavicular joint. (Exhibit 9F)

(Tr. 16.)

The ALJ gave Dr. Paley's opinion that Blake was unable to use her left upper extremity little weight, as Dr. Paley's advice to continue working on her job with light duty and no use of her left arm was given just months after her injury, there was no indication as to the duration of this limitation, and on two subsequent occasions Dr. Paley opined that some of the subjective findings were out of proportion to the objective evidence. The ALJ also referenced Dr. Rojugbokan's findings and Blake's daily activities.

Blake appears to argue that Dr. Paley's reports support her credibility, pointing to records referencing Blake's continued issues with her left upper extremity. (See Pl.'s Br. at 6, ECF No. 20 at 6.) Blake relies heavily on Dr. Paley's final treatment note, dated March 2, 2009, which states that Blake "continues to have ongoing chronic issues involving the left upper extremity consisting of burning, pain and numbness" and on examination, she has "guarded active range of motion of the left wrist" and diminished grip strength. (Tr. 348.) Blake also summarily argues that the ALJ selectively relied on records supporting her conclusion and failed to properly weigh Dr. Paley's opinion in accordance with applicable law.

Upon consideration of the parties' arguments and the record in this matter, as well as controlling and persuasive law, the court finds that Blake has failed to demonstrate that the ALJ's evaluation of Dr. Paley's opinions and Blake's subjective complaints is unsupported by substantial evidence or controlled by an error of law. See Craig, 76 F.3d at 589 (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" and stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Blalock, 483 F.2d at

775 (indicating that regardless of whether the court agrees or disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence). While Blake may disagree with the ALJ's ultimate determination, she has failed to demonstrate that the ALJ failed to properly apply the relevant factors or that the ALJ's decision with regard to Dr. Paley's opinion is unsupported by substantial evidence. See Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (indicating that a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist") (citing 20 C.F.R. § 404.1527); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (indicating that in the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion" and stating that " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' ") (quoting Craig, 76 F.3d at 590).  Similarly, Blake has failed to demonstrate that the ALJ failed to properly apply the relevant factors in evaluating her credibility. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (providing that in evaluating subjective complaints, the Commissioner will consider the following relevant factors: "(I) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to

20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms"). Further, although Blake attempts to point to selective records that may support her subjective complaints, the court may not substitute its judgment for the Commissioner's and finds that the ALJ's conclusions are comfortably within the bounds of the substantial evidence standard. See Craig, 76 F.3d at 595 (stating that a claimant's subjective complaints of pain itself or its severity "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers"); see also Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (noting that the absence of ongoing medical treatment can discredit a claimant's allegations); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Jones v. Callahan, 122 F.3d 1148, 1152 (8th Cir. 1997) (finding an ALJ did not err in considering evidence that a claimant exaggerated the severity of his symptoms as a factor in weighing a claimant's credibility).

Moreover, to the extent that Blake argues that the ALJ only considered selective portions of the record and "cherry-picked" evidence that supported her opinion, upon review of the ALJ's decision and the record as whole, the court disagrees. See, e.g., Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that the ALJ need not specifically refer to every piece of evidence in his decision, so long as the ALJ's decision is not a broad rejection rendering the court unable to conclude that the ALJ considered the claimant's medical condition as a whole); Craig v. Apfel, 212

F.3d 433, 436 (8th Cir. 2000) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").

2.  **Hypothetical Question**

Blake next argues that the ALJ's hypothetical question failed to encompass all of her limitations. Blake appears to argue that the ALJ did not include any limitations stemming from her mental condition. Specifically, Blake contends that the hypothetical question should have included limitations on Blake's abilities to work around the general public or coworkers. The transcript of the administrative hearing, as initially provided, revealed that the pertinent portion of the ALJ's hypothetical question to the vocational expert stated that the hypothetical claimant "[i]s also limited to simple, repetitive tasks with only contact with the general public." (Tr. 76, ECF No. 13-2 at 77.) In response to the plaintiff's brief, the defendant represented that a typographical error occurred in the transcript, whereby the word "occasional" was omitted from this phrase which was clearly audible in the audio recording of the administrative hearing, and submitted a supplemental transcript in which the only apparent alteration was inserting the word "occasionally" in this phrase. (See Def.'s Br. at 10, ECF No. 28 at 10; Tr. at 76, ECF No. 27-2 at 77.) In light of the confusion regarding the accuracy of the transcript, the court directed the Commissioner to produce the audio recording of Blake's administrative hearing to the court and plaintiff's counsel, and the Commissioner complied. Upon review of the recording, the court finds that the ALJ did in fact limit her hypothetical question to *occasional* contact with the general public and therefore, remand is not warranted on this basis.[3] To the extent that Blake argues that the ALJ should have also included a

---

[3] Contrary to Blake's arguments, the court finds that she is not entitled to a remand because she allegedly relied to her detriment on an incorrect transcript of her administrative hearing or that the initial error allegedly violated her due process rights. The court finds the case law cited by Blake to be inapplicable to this case and, in one case, the holding to be inaccurately represented.



limitation regarding contact with coworkers, upon review of the record the court finds that Blake has failed to demonstrate any error by the ALJ. For example, Blake argues that her records from Mental Health from September 2010 show that she "has depressed mood, poor concentration, racing thoughts, hallucinations, fear of losing control, trembling, shaking, [and] panic attacks," which is contrary to the ALJ's findings. (Pl.'s Reply Br. at 3, ECF No. 34 at 3.) However, the ALJ's decision reveals that he considered these records and others in assessing Blake's residual functional capacity. With regard to the September 2010 records, the ALJ specifically found that "[a]lthough the claimant reported increased depression/anxiety in September 2010, she received good results following an increase in her prescribed medications" (Tr. 17), which Blake has failed to demonstrate is unsupported by substantial evidence. (See Tr. 450 (indicating reports of improvement in October 2010)). Moreover, Blake has failed to demonstrate that even if the ALJ erred the result would have been different.

**B.     Additional Arguments**

In light of the fact that the Commissioner filed a supplemental transcript that included the addition of one word to the hypothetical question presented to the vocational expert, Blake argues that she has the right to present additional arguments in her reply. The court disagrees. In her reply, Blake argues for the first time that the ALJ's decision is unsupported based on new evidence presented to the Appeals Council, which shows a deterioration of her mental condition prior to her date last insured. As an initial matter, this argument is unrelated to the one change in the transcript, and arguments that could have been raised in an initial appellate brief should not generally be considered when they are first advanced in a reply brief. However, since Blake may arguably be able to present them for the first time in objections, to which the Commissioner would have the



opportunity to respond, the court finds that even considering Blake's newly advanced argument, remand is not warranted.  See, e.g., Smith v. Colvin, No. 0:12-cv-02447-DCN, 2014 WL 692905, at *5 (D.S.C. Feb. 21, 2014).  The relevant time period for the new evidence is the date of Blake's administrative hearing.  See 20 C.F.R. §§ 404.970(b), 416.1470(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."); Getch v. Astrue, 539 F.3d 473, 483 (7th Cir. 2008) ("Medical evidence postdating the ALJ's decision, unless it speaks to the patient's condition at or before the time of the administrative hearing, could not have affected the ALJ's decision and therefore does not meet the materiality requirement.").  All of the evidence referenced by Blake post-dates the ALJ's decision, and there is no indication that this evidence relates back to the relevant time period.

## RECOMMENDATION

For the foregoing reasons, the court finds that Blake has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 5, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).