**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | |
|---|---|
| DEBORAH D. BLAKE, ) | |
| ) | No. 0:13-cv-00276-DCN |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| CAROLYN W. COLVIN, *Acting* ) | |
| *Commissioner of Social Security*,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on Magistrate Judge Paige J. Gossett's Report and Recommendation ("R&R") that the court affirm Acting Commissioner of Social Security Carolyn Colvin's decision denying claimant Deborah D. Blake's ("Blake") application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Blake filed objections to the R&R. For the reasons set forth below, the court adopts the R&R and affirms the Commissioner's decision.

## I.  BACKGROUND

Unless otherwise noted, the following background is drawn from the R&R.

### A.     Procedural History

Blake filed an application for SSI and DIB on March 4, 2010, alleging she had been disabled since October 25, 2006. The Social Security Administration ("the Agency") denied Blake's application both initially and on reconsideration. Blake requested a hearing before an administrative law judge ("ALJ"), and ALJ Nicole S.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this lawsuit.

1

Forbes-Schmitt presided over a hearing held on September 8, 2011. In a decision issued on September 22, 2011, the ALJ determined that Blake was not disabled. Blake requested Appeals Council review of the ALJ's decision. This decision became the final decision of the Commissioner when the Appeals Council denied further review on December 12, 2012.

On January 30, 2013, Blake filed this action seeking review of the ALJ's decision. The magistrate judge issued an R&R on June 5, 2014, recommending that this court affirm the ALJ's decision. Blake filed objections to the R&R on July 29, 2014 and the Commissioner responded to Blake's objections on August 11, 2014. The matter is now ripe for the court's review.

### B.     Medical History

Because the parties are familiar with Blake's medical history, the court dispenses with a lengthy recitation thereof and instead notes a few relevant facts. Blake was forty-seven years old at the time of her alleged disability onset date. She has a high school education and completed a certificate program for computer operators. She has past relevant work experience as a housekeeper and as both a field inspector and an assembly line worker for a manufacturing company. In her application, Blake alleged disability due to an injured left hand, carpel tunnel syndrome, mental illness, and depression.

### C.     ALJ's Decision

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A); 20 C.F.R. § 404.1505.  The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520, 416.920.  Under this process, the ALJ must determine whether the claimant:  (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an impairment contained in 20 C.F.R. § 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him or her from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his or her remaining physical and mental capacities (defined by his or her residual functional capacity) and his or her vocational capabilities (age, education, and past work experience) to adjust to a new job.  See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981).  The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).  "If an applicant's claim fails at any step of the [sequential evaluation] process, the ALJ need not advance to the subsequent steps."  Id. (citing Hunter, 993 F.2d at 35).

To determine whether Blake was disabled from October 25, 2006 through the date of his decision, the ALJ employed the statutorily-required five-step sequential evaluation process.  At step one, the ALJ found that Blake did not engage in substantial gainful activity during the period at issue. Tr. 12.  At step two, the ALJ found that Blake suffered from the following severe impairments:  left arm injury, carpal tunnel syndrome, and an adjustment disorder with anxiety and depression.  Id.  At step three, the ALJ found

that Blake's impairments or combination thereof did not meet or medically equal one of the impairments listed in the Agency's Listing of Impairments. Tr. 13. Before reaching the fourth step, the ALJ determined that Blake retained the residual functional capacity ("RFC") to perform light work with several restrictions. Tr. 14. Specifically, the ALJ limited Blake to "simple routine and repetitive tasks with only occasional contact with the general public" and "only occasional use of the left upper extremity for fine and gross manipulation." Id. The ALJ further determined Blake could not do any "repetitive pushing/pulling with the left non-dominant upper extremity." Id. At step four, the ALJ found that Blake could perform her past relevant work as a housekeeper, and concluded, therefore, that she was not disabled during the period at issue. Tr. 18.

## II.   STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). This court is not required to review the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. See id. The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations

omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id.

### III.   DISCUSSION

Blake objects to the R&R on three grounds, arguing the magistrate judge erred in: (1) finding that the ALJ had properly followed the treating physician rule; (2) finding that the ALJ's hypothetical questions posed to the vocational expert ("VE") adequately encompassed all of Blake's limitations; and (3) finding that the Appeals Council properly declined to review Blake's new evidence.

#### A. Treating Physician Rule

Blake's first objection to the R&R is that the magistrate judge improperly found no error in the ALJ assigning little weight to the opinion of Dr. Jonathan Paley, her treating physician. Pl.'s Objections 2-3. Blake argues the ALJ failed to properly consider certain evidence in assessing Dr. Paley's opinion, emphasizing a report Dr. Paley issued on March 2, 2009 and Dr. Adebola Rojugbokan's consultative report. Id.

Regulations require that a treating physician's opinion be given controlling weight if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); see, e.g., Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). In such a

circumstance, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro, 270 F.3d at 178.

If a treating physician's opinion does not merit controlling weight, the ALJ is to evaluate it using the following factors: (1) whether the physician has examined the applicant; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the extent to which the opinion is consistent with the record as a whole; (5) the relevance of the physician's medical specialization to the opinion; and (6) any other factor that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(c); see SSR 96–2p; Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). However, the Fourth Circuit has not mandated an express discussion of each factor and another court in this district has held that "an express discussion of each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons for his decision." Hendrix v. Astrue, No. 1:09-cv-1283, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010); see § 404.1527(c)(2) (requiring ALJ to give "good reasons" for weight given to treating source's opinion). A district court will not disturb an ALJ's determination as to the weight to be assigned to a medical opinion, including the opinion of a treating physician, "absent some indication that the ALJ has dredged up 'specious inconsistencies' . . . or has not given good reason for the weight afforded a particular opinion." Craft v. Apfel, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam) (unpublished table decision) (internal citation omitted).

On March 16, 2007, about five months after Blake injured her left upper extremity in an accident at work, Dr. Paley advised Blake she could "continue light-duty work with no use of the left arm." Tr. 335. The court cannot find any other evidence in

the case record in which Dr. Paley specifically opines Blake should not use her left upper extremity. In her decision, the ALJ afforded "little weight" to Dr. Paley's opinion that Blake is "absolutely unable to use her left upper extremity." Tr. 17. In doing so, the ALJ determined that other evidence of record and Dr. Paley's own treatment notes did not support this finding. Tr. 17-18.

Specifically, the ALJ noted that "this advice was offered just months after [Robinson's] injury," and that "Dr. Paley did not indicate the duration of the light duty restriction or the left arm limitation." Id. The ALJ further noted that, "by March 2007, Dr. Paley had twice opined that some of the subjective findings were out of proportion to the objective evidence." Tr. 18. The ALJ went on to consider Dr. Rojubokan's opinion that Blake "was unable to use her left hand because of the wrist injury and examination results showing the claimant to have 1/5 grip strength on the left and decreased range of motion of the left wrist during examination on July 2010." Id. The ALJ noted the inconsistencies in Dr. Rojubokan's opinion, in that the same consultative report showed Blake "was still able to demonstrate the ability to button buttons, pick up coins and grasp and manipulate larger objects with her left hand." Id.

The ALJ further noted that neither Dr. Paley nor Dr. Rojubokan reported joint deformity, swelling or muscular atrophy present in Blake's left wrist and hand. Tr. 18. Finally, the ALJ considered evidence in the case record revealing Blake's ability to perform activities of daily living. Id. Specifically, on May 19, 2010, less than two months before Dr. Rojubokan issued his consultative report, and well after Dr. Paley opined Blake should not use her left upper extremity, Blake reported she could fix simple

7

meals, take care of her personal needs, and do some light cleaning and laundry. Tr. 221-228.

As noted by the magistrate judge, the ALJ's decision contains an extensive discussion of Dr. Paley's treatment records. Tr. 15-17. Contrary to Blake's assertion, the ALJ did not ignore Dr. Paley's March 2, 2009 report. Rather, when assessing Blake's RFC, the ALJ expressly noted that Blake "continued to complain of pain and examinations through March 2009 revealed guarded range of motion of the left wrist and diminished grip strength of the left hand with decreased sensation." Tr. 16.

There is no indication that the ALJ dredged up specious inconsistencies in discounting Dr. Paley's opinion. Blake's objection is essentially an invitation to the court to reweigh the evidence and come to its own conclusion. Such reweighing of the evidence is not within the province of this court. See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (holding that a reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ).

Blake's first objection fails.

### B.    VE Testimony

Blake's second objection to the R&R is that the magistrate judge improperly found the ALJ's hypothetical questions to the VE adequately encompassed all of Blake's limitations. Pl.'s Objections 4. Specifically, Blake argues the ALJ failed to include her mental limitations and limited ability to interact with co-workers. Id. Blake also appears to argue that the ALJ failed to consider VE testimony favorable to Blake. Pl.'s

Objections 3-4. In particular, she notes the VE's response to a hypothetical question about an individual who could not use the left upper extremity. Id.

"The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); see §§ 404.1560(b)-(c) and 404.1566(e). The ALJ may pose hypotheticals to the VE that "fairly set out all of [the] claimant's impairments." Walker, 889 F.2d at 50; see also Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (holding that hypotheticals must "adequately" describe the claimant's impairments). However, the hypotheticals posed by the ALJ need only reflect those impairments supported by the record. Russell v. Barnhart, 58 F. App'x 25, 30 (4th Cir. 2003) (unpublished) (citing Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)). Furthermore, an ALJ is not required to accept the answers a VE gives to a hypothetical that contains limitations not ultimately adopted by the ALJ. See Hammond v. Apfel, 5 F. App'x 101, 105 (4th Cir. 2001) (unpublished).

In her RFC analysis the ALJ extensively discussed Blake's anxiety and depression. Tr. 17. Contrary to Blake's assertions, the ALJ specifically considered the medical reports from September 2010, in which Blake reported depression and anxiety. Id. The ALJ noted that Blake then "received good results following an increase in her prescribed medications." Id. After a lengthy discussion of Blake's mental impairments, the ALJ limited Blake to "simple, routine and repetitive tasks with only occasional contact with the public," finding "these limitations adequately accommodate her mental condition." Id. The ALJ then included these limitations in all of the hypotheticals posed to the VE. Tr. 76.

At the hearing, the ALJ first asked the VE if an individual with Blake's RFC could perform any of Blake's past work as an assembly worker, housekeeper, and automobile worker. Tr. 76. The VE testified that such an individual could only be a housekeeper. Id. The ALJ then asked the VE whether an individual who, in addition to the limitations already specified, could not use the non-dominant left upper extremity at all, would be able to perform housekeeping. Id. The VE testified that such a limitation "would eliminate the housekeeping." Id.

The ALJ's ultimate RFC assessment was based on his first hypothetical to the VE. Tr. 14, 76. That RFC included "only occasional use of the left upper extremity for fine and gross manipulation," rather than eliminating the use of the left upper extremity. Tr. 14. The ALJ was not required to accept the VE's answers concerning limitations not ultimately adopted by the ALJ. Hammond, 5 F. App'x at 105. To the extent that Blake thinks that the limitations incorporated in the second hypothetical should be adopted, his argument is properly framed as an objection to the ALJ's RFC determination. Blake has not made such an objection here.

Blake's second objection fails.

### C.     The Appeals Council's Consideration of Additional Evidence

Blake's final objection to the R&R is that the magistrate judge erred in finding that the Appeals Council properly declined to review Blake's new evidence. Pl.'s Objections 4. Blake maintains that the Appeals Council should have reviewed records from Charleston County Mental Health dated February 23, 2012 and May 29, 2012. Id. Blake argues that this evidence, which includes a medical statement from Dr. Elizabeth Leonard, shows a deterioration of her mental condition prior to her date last insured. Id.

While a claimant may present additional evidence to the Appeals Council that was not available to the ALJ, the Appeals Council must review additional evidence only if it is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep., of Health & Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991); see also 20 C.F.R. § 404.970(b); Meyer v. Astrue, 662 F.3d 700, 705 (4th Cir. 2011). "Evidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'" Meyer, 662 F.3d at 705 (quoting Wilkins, 953 F.2d at 96).

As an initial matter, the medical record dated February 23, 2012 does not appear to present new or material evidence. Blake submits in this record she reported having temper tantrums and mood swings, and also stated that "people would get on her nerves." Pl.'s Objections 4. In her decision, the ALJ discussed records that indicated Blake did "not like to be around other people," Tr. 13, and that noted her "anxious affect and depressed mood." Tr. 17.

Even if these records were new and material evidence, it would still be inappropriate for the Appeals Council to consider them because they do not relate to the period on or before the ALJ's decision. Blake asserts that, because she "was treated at Charleston County Mental Health prior to her hearing," the records relate to the period before the date of the ALJ's decision. Pl.'s Objections 4-5. However, the evidence she submitted to the Appeals Council relates specifically to her treatment under Dr. Leonard. Tr. 498, Tr. 512. There is no evidence Dr. Leonard treated Blake at any time before the ALJ issued her opinion. Tr. 521. Furthermore, the medical records submitted to the

Appeals Council date to February and May 2012, months after the ALJ issued her opinion in this case.  Tr. 19, 498, 521.

The magistrate judge did not err in her assessment of the Appeals Council's actions.  As a result, Blake's final objection is overruled.

## IV.   CONCLUSION

Based on the foregoing, the court **ADOPTS** the magistrate judge's R&R, and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**September 29, 2014
Charleston, South Carolina**

12